M. J. NOE, Admr.

v.

J. I. MOUTRAY *et al.*

*Opinion filed November 8, 1897.*

1. EXECUTORS AND ADMINISTRATORS—*administrator takes no title to realty.* An administrator takes no interest in the realty save a naked power to sell the same upon the order of the court, in case the personal estate of the intestate is insufficient to pay his debts.

2. JUDGMENTS AND DECREES—*judgment against administrator not a lien upon real estate.* A judgment against an administrator, in his representative capacity, upon a claim against the estate, is not a lien upon the land belonging to the estate.

3. SAME—*essentials of a judgment in order to create a lien.* A judgment, in order to create a lien, must be final and for a definite amount, and one upon which execution may issue.

4. CONVEYANCES—*"creditors," within meaning of section 30 of Conveyance act, must have liens.* A "creditor," within the meaning of section 30 of the Conveyance act, (Rev. Stat. 1874, p. 278,) concerning the taking effect of deeds upon recording, is one who, without actual or constructive notice of a prior conveyance or incumbrance, has reduced his claim to a judgment of the character creating a lien upon the property before the recording of the deed or mortgage.

5. SAME—*parties whose claims have been allowed against administrator are not "creditors."* Parties whose claims against an estate have been allowed by the probate court are not such "creditors" having liens, under section 30 of the Conveyance act, as to entitle their claims to priority over a valid deed executed by the deceased owner during his lifetime, but unrecorded at the time the claims were allowed.

APPEAL from the County Court of Richland county; the Hon. T. W. HUTCHINSON, Judge, presiding.

JOHN LYNCH, Jr., and JAMES C. HOWARD, for appellant:

The order of the county court allowing a claim against the estate of a decedent is a judgment at law. *Propst* v. *Meadows*, 13 Ill. 157; *Mitchell* v. *Mayo*, 16 id. 83; *Wheeler* v. *Dawson*, 63 id. 54.

An allowance of a claim against an estate is a judgment, and, like a judgment of a court of record, becomes

a lien on the land of the intestate. *Wheeler* v. *Dawson*, 63 Ill. 54.

The statute, in effect, reserves a lien upon the land of an intestate to secure the payment of any excess of indebtedness beyond the proceeds of the personal estate, to be enforced by the administrator for the benefit of the creditors generally. *Vansyckle* v. *Richardson*, 13 Ill. 171.

Creditors of a deceased person have a lien upon the real estate superior to the rights of devisees or purchasers, and such lien may be enforced in any reasonable time by administration upon and a sale of real estate. *McCoy* v. *Morrow*, 18 Ill. 519; *Myer* v. *McDougal*, 47 id. 278; *Reed* v. *Colby*, 89 id. 104; *Lewis* v. *McGraw*, 19 Ill. App. 313.

Judgment creditors are within the protection of section 31 of the Conveyance act, and stand as purchasers, and are to be regarded as such. *McFadden* v. *Worthington*, 45 Ill. 362; *Massey* v. *Westcott*, 40 id. 160.

The retention of possession and receiving the rents and profits by the grantor after the execution of a deed therefor absolute upon its face manifest a secret trust in favor of the grantor, and render the conveyance void, not only against precedent but subsequent creditors without notice. *Anderson* v. *Armstead*, 69 Ill. 454; *Jones* v. *King*, 86 id. 225; *Power* v. *Alston*, 93 id. 587; *Moore* v. *Wood*, 100 id. 451.

A judgment creditor and a purchaser are equally protected, and a judgment lien attaches to whatever interest in real estate the records disclose in the judgment debtor, in the absence of notice from other sources. *Buggy Co.* v. *Graves*, 108 Ill. 459; *Bergman* v. *Bogda*, 46 Ill. App. 351.

ALLEN & FRITCHEY, and J. I. MOUTRAY, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

This is a petition, filed in the county court by the appellant, M. J. Noe, administrator of the estate of Joseph Johnson, deceased, for the sale of land to pay debts.

The petition shows the insufficiency of personal assets. It makes defendants thereto the heirs of the intestate, and certain of his grantees, and also certain grantees of his heirs. It also makes, as parties defendant, certain persons holding mortgages, executed upon the premises by the grantees of the heirs. Answers were filed to the petition by these mortgagees and grantees. Exceptions were filed to the answers. These exceptions were over-ruled. The petitioner abode by his exceptions; and the court dismissed the petition at the costs of the adminis-trator. To this exception was taken, and an appeal has been brought to this court. Without considering the ques-tion, whether the pleadings are in proper shape or not, and without going into an elaborate statement of their contents, or of all the facts in the case, we deem it suffi-cient to state enough of the facts to present the question argued by counsel, and submitted in their briefs.

The property, which the administrator asked to have sold for the payment of the claims allowed against the estate, consisted of eighty acres of land in Richland county. The answers deny, that the deceased intestate owned this tract of eighty acres at the time of his death, and deny the right of the petitioner to a sale of the same for the payment of debts against the estate.

Joseph Johnson, the intestate, died October 9, 1894, leaving him surviving his widow, Sarah L. Johnson, who has sold her interest to the grantees hereinafter named, and, as his only heirs-at-law, two sons, Isaac Johnson and Samuel Johnson, and one daughter, Emily S. Clark, and certain grandchildren, who are minors, the children of a deceased son of the intestate, named William Johnson. William Johnson left a widow named Nancy Johnson. Appellant was appointed administrator of the estate on November 19, 1894. On November 9, 1885, nearly nine years before his death, the intestate, Joseph Johnson, executed a deed of the premises in question to his sons, Isaac Johnson and Samuel Johnson, and his daughter,

Emily S. Clark, and his daughter-in-law, Nancy Johnson. This deed was never put on record until April 9, 1895, nearly five months after letters of administration were taken out. After it was put on record, the grantees therein conveyed their interest in the premises to one J. I. Moutray, who executed a mortgage thereon to the executors of the will of one John H. Clark, deceased. J. I. Moutray conveyed the premises to M. O. Moutray, a single person, who conveyed them to Perce L. Moutray, the wife of J. I. Moutray. Perce L. Moutray and her husband executed a mortgage upon said premises for the sum of $1500.00 to one R. N. Stotler on September 16, 1895. On November 26, 1894, a claim was allowed against said estate in the county court of Richland county. On January 7, 1895, other claims were allowed against said estate. On March 6, 1895, still other claims were allowed. For all of these claims judgments were rendered. It will be observed, that these claims were allowed, or judgments rendered, before April 9, 1895, when the deed was recorded.

It is claimed on the part of appellees, the Moutrays and their mortgagees, that the intestate conveyed away this property in his lifetime to their grantors, the two sons and the daughter and the daughter-in-law of the intestate; that the land belongs to them, as holding under the grantees of the intestate; and that, at the time of his death, the intestate had no interest therein. On the other hand, it is claimed by the appellant, the adminis-trator, that, inasmuch as the claims in question were allowed against the estate before the deed made by the intestate was recorded, and while the record showed, that the intestate held the title at the time of his death, and that the title was in his heirs thereafter up to the time of the recording of the deed, therefore the rights of the creditors, whose claims were allowed, should have pre-cedence over those of the grantees in the deed, and those holding under them.

Undoubtedly an administrator has no right to sell, for the payment of debts of the intestate, any land which did not belong to the intestate at the time of his death. The question here presented, however, is, whether the holders of judgments against an estate, or against the administrator of an estate, can be regarded as such creditors under the Conveyance act, as that they can subject the land to the payment of their debts, as against the grantees in an unrecorded deed made by the intestate in his lifetime. It is not claimed on the part of the appellant, that the unrecorded deed executed by the intestate in his lifetime was fraudulent, or made for any improper purpose. As between the parties to it, it was certainly a valid deed. The petition makes no attack upon the deed, and does not seek to question its validity in any other respect than that it was unrecorded when the claims were admitted to probate.

Are the parties, whose claims against the estate were allowed, "creditors" within the meaning of section 30 of the Conveyance act? Said section 30 provides that "all deeds, mortgages and other instruments of writing which are authorized to be recorded, shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers, without notice; and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers, without notice, until the same shall be filed for record." (1 Starr & Cur.—2d ed.—p. 944). In the case of *Martin* v. *Dryden*, 1 Gilm. 187, a construction was given to this statute, so far as to define the meaning of the word "creditor" as therein used. In that case we said that a "creditor," within the meaning of the recording acts, is "one, who without actual or constructive notice of a prior conveyance or encumbrance, institutes such proceedings, or takes such steps, as effect a lien on the land before the recording of such conveyance or encumbrance, whether the debt be prior or subsequent to

them, and whether the vendor, at the time of conveying or encumbering, had other property sufficient to pay the debt or not." This definition has been followed in many subsequent cases. In *Massey* v. *Westcott*, 40 Ill. 160, we said: "Under our statutes a purchaser and a judgment creditor having a lien stand upon the same equity." (*McFadden* v. *Worthington*, 45 Ill. 362; 2 Devlin on Deeds,— 2d ed.—sec. 635, and note). As the creditor mentioned in said section 30 must be a judgment creditor having a lien, the further question arises whether a party, who has his claim allowed against a deceased man's estate, is a judgment creditor having a lien upon the real estate of the deceased.

It is well settled, that the administrator takes no estate, title or interest in the realty, save a naked power to sell the same upon the order of the probate court, the exercise of which is conditioned upon an insufficiency of personal assets to pay the debts of the intestate. Under our law the legal title to the personal estate vests in the administrator, but the title to the real estate descends to the heir-at-law. (*Phelps* v. *Funkhouser*, 39 Ill. 401; *Stone* v. *Wood*, 16 id. 177; 2 Woerner on Am. Law of Administration, sec. 463). Hence a judgment rendered against an administrator in his representative capacity has no operation as a lien upon land belonging to the estate. (1 Black on Judgments, sec. 409). When a claim is allowed against an estate, such judgment of allowance is merely *prima facie* evidence of the debt due by the estate, so far as the realty is concerned. It is the basis of "a proceeding to try whether or not the realty is chargeable with it." (2 Black on Judgments, sec. 560). It is true that, in many of the decisions rendered by this court, the right of the creditors through the administrator to subject the land of the deceased by sale to the payment of their claims is spoken of as a lien. (*McCoy* v. *Morrow*, 18 Ill. 519; *Myer* v. *McDougal*, 47 id. 278; *Reed* v. *Colby*, 89 id. 104). But the word "lien," as used in these cases, has a qualified meaning, and

not the meaning, which is given to it in the first section
of the chapter of the Revised Statutes in regard to judg-
ments. The cases thus referred to are based, for the most
part, on the original case of *Vansyckle* v. *Richardson*, 13 Ill.
171, where we said (p. 173): "The statute, in effect, reserves
a lien on the lands of an intestate to secure the payment
of any excess of the indebtedness beyond the proceeds of
the personal estate. This lien is to be enforced by the
administrator for the benefit of the creditors generally."
It will be noticed, that the lien reserved is not to secure
the amount of the claims, as allowed against the estate,
but the excess of the whole indebtedness of the estate
beyond the proceeds of the personal estate. Other cases
speak of the right of the creditors to subject the land to
sale for the payment of their debts as a qualified lien,
operating to make the land liable to be charged and not
actually subject to charge. Thus in *Bishop* v. *O'Conner*,
69 Ill. 431, it is said: "It is not accurate to say, that the
lands are charged, but rather that they are liable to be
charged," etc. This language is adopted and approved
in the case of *Wilson* v. *Schneider*, 124 Ill. 628, where it was
said, that the "right of the creditors of an estate to have
the realty sold to pay their debts is *in the nature of a lien*
upon the land." Again, in *Harding* v. *LeMoyne*, 114 Ill. 65,
this right of the creditors is spoken of as a mere power
vested in the administrator. We there said, (p. 64,) that
the administrator "takes no interest in or to the realty.
In no event can he take anything more than a mere power,
and, in the absence of an insufficiency of personal assets
to pay the debts of his intestate, he has no more to do
with it than a stranger, having no connection whatever
with the estate. And even when such insufficiency in
the personal estate exists, he has, as just remarked, but
the mere power to sell for the payment of debts; and this
right can only be enforced through the instrumentality
of some court specially authorized to do so." It is thus
apparent, that the right to subject the land to the pay-

ment of the debts is something less than a lien, as the signification of that word is ordinarily understood. It is true, as claimed by counsel, that the order of the probate court, allowing a claim against the estate of a decedent, has been held by this court to be a judgment at law. (*Propst* v. *Meadows*, 13 Ill. 157; *Wheeler* v. *Dawson*, 63 id. 54; *Mitchell* v. *Mayo*, 16 id. 83). But, although such a claim when allowed is called a judgment, yet it is a judgment to be paid in the due course of administration, and not a judgment upon which an execution can be issued. (*Mitchell* v. *Mayo, supra*). In harmony with this view it was decided in *Stone* v. *Wood,* 16 Ill. 177, that "the judgment against the administrator is not a judgment against, or a lien upon, the land."

It is well settled, that a judgment cannot be a lien upon land without statutory authority therefor. Without going into any discussion of the common law nature of such a lien, it is sufficient to say, that, at the present day, it is the creature of statute. When there is no express statute authorizing a judgment to be a lien upon land, such a judgment does not take effect as a lien in the modern sense of the term. (1 Black on Judgments, sec. 398). In this State there is no statute authorizing a judgment against the estate of a deceased person to be a lien on his real estate. Section 1 of chapter 77 of the Revised Statutes in regard to judgments, etc., provides as follows: "A judgment of a court of record shall be a lien on the real estate of the person against whom it is obtained * * * from the time the same is rendered or revived for the period of seven years and no longer." The judgment, which is thus made a lien upon land, is a judgment against a person, and not a judgment against an estate. It is a judgment against the real estate of a living person, and not of a dead person. The same section 1 provides for the issuance of execution upon such judgment as is therein declared to be a lien. (2 Starr & Cur. —2d ed.—p. 2324). But, as has already been stated, no

execution is awarded upon a judgment against an estate. It is true, that section 27 of the chapter in relation to judgments provides for the issuance of execution upon such a judgment for the purpose of redemption from the sale of real estate of a deceased debtor. Section 27 was discussed and commented upon in *Wilson* v. *Schneider, supra.* But the authority to issue execution upon such a judgment is limited to the purpose of redemption as specified in section 27.

A valid judgment, in order to create a lien, must possess two qualifications: *first,* it must be final and for a definite sum; and *second,* it must be such a judgment that execution may issue thereon. (12 Am. & Eng. Ency. of Law, p. 104; 1 Black on Judgments, secs. 407, 408; *Mitchell* v. *Mayo, supra;* Rev. Stat. chap. 77, sec. 1). A judgment or claim allowed against an estate is not final or definite in amount, so far as the real estate is concerned, for two reasons: In the first place, the exact amount of it to be paid by a sale of the real estate cannot be definitely ascertained, until the personal estate of the decedent is exhausted. The administrator must realize upon the personal estate, and apply what he thus realizes to the payment of the debts; and the extent, to which the debts and claims remain unpaid after the application of the personal estate, is the measure of the amount which is to be made by the sale of the real estate. It is evident, therefore, that the final and definite amount of the judgment to be enforced against the land cannot be fixed, until it has been ascertained how far the personalty is insufficient to pay such claims. In the second place, the heirs are not bound by such judgment. When a petition is filed by an administrator to sell the land for the payment of the claims allowed against the estate, the heirs and devisees are required, under the statute, to be made parties. Their interest cannot be affected by the judgment rendered against the administrator without notice to them. They have the right to come into court, and

question and disprove the items, included in, or constituting, such a judgment, if they can. In the proceeding to sell the land, they may set up any defenses which they had no opportunity to set up when such judgment was obtained; and consequently it is not final as to the heirs when originally allowed against the estate. (2 Black on Judgments, sec. 560; *Stone* v. *Wood, supra; Diversey* v. *Johnson,* 93 Ill. 547). Such a judgment against an estate lacks the second qualification above referred to, because execution cannot issue upon it.

If the judgments against Joseph Johnson had been rendered in his lifetime, the holders of them, having no notice, at the time of their rendition, of the unrecorded deed above described, would be entitled to enforce them as prior liens against his lands ahead of the rights of the grantees in such deed. But the creditors here obtained the allowance of their claims against the estate of Joseph Johnson after his death, and after he had in his lifetime conveyed away the land in question. They have no more right to priority over the grantees in the deed unrecorded than if it had been recorded.

For the reasons stated, we are of the opinion, that a creditor, whose claim against an estate has been allowed in the probate court, is not such a judgment creditor, having a lien within the meaning of the recording acts, as entitles him to priority over an unrecorded deed, executed by the deceased in his lifetime, and remaining unrecorded at the time of the allowance of such claim. This view disposes of the only question involved in this case. Accordingly, the county court decided correctly in overruling the exceptions to the answers and dismissing the petition of the administrator. Therefore, the judgment of the county court is affirmed.     *Judgment affirmed.*