HOLLOWAY VANSYCKLE et al., Plaintiffs in Error, *v.* WILLIAM RICHARDSON et al., Defendants in Error.

### ERROR TO SCOTT.

Under our statute, the lands of an intestate are held subject to the payment of his debts. If the personal estate does not satisfy the debts, the real estate, by order of Court, will be sold for that purpose, and the proceeds are declared to be assets in the hands of the administrator.

The statute in effect reserves a lien on the lands of an intestate, to secure the payment of any excess of indebtedness beyond the proceeds of the personal estate. This lien is to be enforced by the administrator for the benefit of the creditors.

An heir cannot incumber or aliene real estate, to the prejudice of the rights of the creditors. His is a defeasible estate, liable to be defeated by a sale made by the administrator in the due course of administration, but becomes absolute, after the debts are extinguished.

A purchaser of real estate under a judgment against the heir, occupies no better position than he who purchases directly from the heir.

Under proper circumstances, a court of equity will provide for the administration of assets in cases of intestacy; in doing so the Court should have all the creditors before it, and make such a disposition of the property as is required by the statute respecting estates.

FOR a statement of the record, see opinion of the Court. The cause was heard before WOODSON, Judge.

M. McCONNEL, for plaintiffs in error.

WILLIAM THOMAS, for defendants in error.

TREAT, C. J. Although this record is very voluminous, the leading facts of the case may be briefly stated. J. R. & O. C. Smith were brothers and partners in trade. J. R. Smith died intestate, in 1837, seized of considerable real estate, and leaving

O. C. Smith his sole heir at law. The firm was then largely indebted, and O. C. Smith continued in charge of the business, as surviving partner. In August, 1837, O. C. Smith conveyed a portion of the real estate to Eckle, Spangler & Ludwig, by way of mortgage, to secure the payment of a debt due them from the firm. In October, 1837, Lloyd & McGrath recovered a judgment against the surviving partner, for $114.31. In February, 1838, O. C. Smith conveyed the whole of the real estate to H. B. McClure, in trust for the creditors of the firm, including Eckle, Spangler & Ludwig, and Lloyd & McGrath. In October, 1839, under an execution issued on the judgment in favor of Lloyd & McGrath, the real estate was sold to McConnell & Vansyckle, for $150.66, who subsequently obtained a sheriff's deed. In August, 1842, McConnell & Vansyckle sold and conveyed one tract of the land to Fielder. In July, 1847, W. & W. H. Richardson, M. Badger, C. & G. Abbott, K. F. Edgell, T. H. Buckmaster, and Elms, Brooks, Cole, and Crossman, part of the creditors named in the deed of trust, filed a bill in chancery against Loyd & McGrath, Eckle, Spangler & Ludwig, F. M. Fisk, J. S. Davis, and L. Davis, the other creditors named in the deed of trust; O. C. Smith, the surviving partner; McClure, the trustee; McConnell & Vansyckle, and Fielder. The bill set forth the indebtedness of J. R. & O. C. Smith; the execution of the deed of trust; the refusal of the trustee to make sale of the real estate; and prayed for a decree for the sale thereof, to pay the debts due to the creditors of the firm. Lloyd & McGrath, McConnell & Vansyckle, and Fielder, in their answers, insisted that the title to the lands passed by the sale under the judgment. Eckle, Spangler & Ludwig, by their answer, set up their mortgage as a subsisting lien on the lands. They also filed a cross-bill, praying for a decree of sale, to pay the amount due on the mortgage, in exclusion of the other creditors. On a final hearing, a decree was entered, dismissing the cross-bill, ascertaining the amounts due the creditors respectively, directing a sale of so much of the real estate as would be sufficient to discharge the debt; and, in case the proceeds of the sale should prove insufficient for the purpose, then the same should be distributed *pro ratâ* among the creditors. The decree

excluded Lloyd & McGrath from any participation in the pro-
ceeds of the sale.  McConnell & Vansyckle, Lloyd & McGrath,
and Fielder, sued out a writ of error.

Under our statute, the lands of an intestate are held subject
to the payment of his debts.   After the personal estate is ex-
hausted, it is made the duty of the administrator to apply to
the proper court, and obtain a license to sell so much of the real
estate as will be sufficient to discharge the residue of the debts.
The proceeds of the sale are declared to be assets in the hands
of the administrator.   Rev. Stat. chap. 109.   Creditors are not
compelled, as at common law, in order to procure satisfaction of
their debts, where there is a deficiency of assets for the purpose,
to pursue the lands into the hands of the heir; or, to charge the
heir with its value, in the case of an alienation by him.   They
have only to establish their demands against the administrator,
and he is required to make payment out of the personal estate;
and, when that proves insufficient, to convert enough of the
real estate into assets to meet the deficiency.   The statute,
in effect, reserves a lien on the lands of an intestate, to secure
the payment of any excess of indebtedness beyond the proceeds
of the personal estate.   This lien is to be enforced by the ad-
ministrator, for the benefit of the creditors generally.   The lien,
however, is not perpetual, but may be lost by gross laches or
unreasonable delay.   The real estate descends to the heir with
this charge resting upon it.  He cannot incumber or aliene it, to
the prejudice of the rights of creditors.  He acquires a vested,
but not an absolute, interest in the land.  He takes a defeasible
estate, liable to be defeated by a sale made by the administra-
tor, in the due course of administration.  He has no just claim
to the land until the indebtedness of his ancestor is fully dis-
charged.   He acquires an absolute title only to what remains
after the debts are extinguished.   See 4 Kent's Com. 419, 421;
Wilkinson v. Leland, 2 Pet. 627; Watkins v. Holman, 16 Ibid.
25; Gore v. Brazier, 3 Massachusetts, 523; Drinkwater v. Drink-
water, 4 Ibid. 354; where the same principles are asserted in
reference to similar statutes.

It follows, that O. C. Smith acquired but a qualified interest
in the real estate of which his brother died seized.  He inherited

15*

the lands, burdened with the debts of the former owner. He could not transfer any greater estate than was cast upon him by descent. It was not in his power to mortgage or convey the lands, to the prejudice of the creditors. A purchaser, under a judgment against the heir, occupies no better position than a purchaser immediately from the heir. The mortgagees and purchasers succeeded to but a qualified estate in the lands, subject to be divested by a sale made in the due course of administration.

The 8th and following sections of the 44th chapter of the Revised Statutes are not applicable to the present case. Those provisions relate exclusively to cases in which a creditor proceeds directly against the heir, to recover a debt due from the ancestor. In such cases, if the real estate of the ancestor has been *bonâ fide* aliened by the heir, it cannot be sold under the judgment obtained against him ; but the creditor may satisfy his judgment out of other property of the heir, to the extent of the value of the land so aliened.

It is a fair inference, from the whole case, that the deceased partner left no individual creditors, and no separate personal estate. The partnership creditors have, therefore, an undoubted right to resort to his separate real estate for the payment of their debts. It is likewise a fair inference, from the record, that there has been no administration upon his estate. Under these circumstances, there can be no reasonable doubt of the authority of a court of equity to take jurisdiction of the case, at the instance of any of the joint creditors, and proceed to a full and final adjustment of the rights of all parties interested in the subject-matter. The administration of assets, in cases of intestacy, is one of the acknowledged powers of a court of chancery ; and the peculiar state of facts in this case appropriately called its functions into active exercise. Upon this point, I shall barely refer to the 9th chapter of Story's Equity Jurisprudence, where the whole subject is thoroughly discussed by that eminent jurist. But, in a case of this character, the court should have all of the creditors before it, and make such a disposition of the property as would be consistent with the provisions of the statute respecting the settlement of estates. It is the settled

policy of our laws, that all the creditors of a deceased person shall be permitted to participate in the distribution of the assets. If the estate is insolvent, they are to receive payment in the proportion of their respective debts. It is a reasonable presumption, in this case, that all of the partnership creditors were made parties to the suit. Indeed, there is not even a suggestion to the contrary. The court, having all of the creditors before it, directed their debts to be discharged *pro ratâ*, out of the proceeds of the sale. That direction was conformable to the requisitions of the statute and the established principles of equity.

Lloyd & McGrath have no claim on the real estate, nor on the fund that may arise from the sale. Their judgment has been paid, and they are no longer creditors of the firm. McConnell & Vansyckle, by their purchase, only acquired the interest that O. C. Smith had in the lands, as the heir of the former owner, and they must be content with what may remain after the debts are discharged. Fielder succeeded to no greater estate than his grantors had. If his title shall be divested by the sale, his only recourse will be upon the covenants contained in his deed.

The decree must be affirmed. *Decree affirmed.*